UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGOR A. ALATORTEV,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JETBLUE AIRWAYS, INC.,<br><br>　　　　Defendant. | Case No. 3:17-cv-04859-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

**INTRODUCTION**

Plaintiff Igor Alatortev and his wife paid JetBlue Airways, Inc. a baggage fee of $25 to check a bag on a domestic flight. He claims that the bag was "lost" (although he later retrieved it), and he brought claims on behalf of a putative class against JetBlue purportedly based on JetBlue's Contract of Carriage ("COC") for breach of contract, unjust enrichment/quasi contract, and breach of the implied covenant of good faith and fair dealing. As currently pleaded, it appears that Alatortev's state-law claims are expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1), and impliedly preempted by principles of field and conflict preemption because they relate to an area pervasively regulated by the federal government under the Federal Aviation Act, 49 U.S.C. §§ 40101 et seq. The preemption analysis depends on Alatortev's ability to state a breach of contract claim based on JetBlue's "self-imposed undertaking" and not a "State-imposed obligation;" Alatortev fails to state a claim upon which relief can be granted. I am skeptical that he can plead around those and other issues highlighted by JetBlue, but I will give him the opportunity to do so. Accordingly, I am granting JetBlue's motion to dismiss and giving Alatortev leave to file an amended complaint within 30 days.

# BACKGROUND

## I.  FACTUAL BACKGROUND

### A.  Contract of Carriage[1]

In June 2015, Defendant JetBlue Airways, Inc. ("JetBlue") instituted a new policy to charge a passenger traveling on a domestic flight a fee of $25 for his first bag checked (or $20 under certain conditions), $35 for the second bag, and $100 for a third bag. Compl. ¶¶ 1–3 (Dkt. No. 1). The baggage fee is charged "in a transaction separate and apart from the customer's purchase of the airline ticket." Compl. ¶ 27. Plaintiff Igor Alatortev alleges that JetBlue "took the deliberate 'self-imposed' undertaking to create a baggage fee, set the baggage fee, and require its passengers to pay the baggage fee." Compl. ¶ 24.

The COC provides that:

> Carrier will check the baggage of a fare-paying Passenger for the flight on which the Passenger is traveling. Passenger may not check baggage for transportation on any flight other than the flight on which the Passenger is traveling. Carrier will not check baggage to a destination other than the final destination on the Passenger's reservation.

COC ¶ 11.

The COC's "Notice of Claims" provision states:

> For domestic transportation, initial notice of any claim for loss, damage, or delay in delivery of baggage must be given at any Passenger service counter or any office of Carrier within four (4) hours after arrival of the flight on which the loss, damage or delay is alleged to have occurred. Confirming written notice of any baggage related claim, and initial written notice of any other type of claim against Carrier, with appropriate details of the claim, must be given to Carrier not more than twenty-one (21) days after occurrence of the event giving rise to the claim. Failure to give notice within these time limits will not bar the claim if the claimant establishes to the satisfaction of Carrier that he/she was unable to give such notice.
>
> For domestic transportation, legal action on any claim described above must be brought within one (1) year of Carrier's written denial, in whole or in part, of the claim.

---

[1] Alatortev attached JetBlue's COC, to which each passenger agrees to be bound when he makes a reservation or accepts transportation on JetBlue, to his complaint. *See* COC at 1 (Compl., Ex. A). Since the COC was attached to the complaint, I may appropriately consider it at the pleading stage.

COC ¶ 22(A).

In the section entitled "Failure to Operate as Scheduled," JetBlue states that it "will endeavor to carry Passengers and their baggage with reasonable dispatch, but times shown in schedules or elsewhere are not guaranteed and form no part of this Contract of Carriage." COC ¶ 25(B). In addition, it provides that "[a]ll schedules are subject to change without notice." *Id*.

It also incorporates a "Passenger Service Plan" into the COC. *See* COC ¶ 38. Within this section, JetBlue states

> Carrier will endeavor to deliver baggage on time, including making every reasonable effort to return mishandled bags within twenty-four (24) hours, reimbursing Passengers for reasonable expenses that occur because of any delay on domestic flights … and reimbursing Passengers for any fees associated with transportation of a lost bag.

COC ¶ 38(a)(3).

### B. Federal Aviation Regulations Concerning Checked Baggage[2]

The United States Department of Transportation regulates consumer protection rules related to the carriage of baggage. *See, e.g.*, Part 254—Domestic Baggage Liability (Mot. to Dismiss, Ex. A.; Dkt. No. 18-1). The Federal Aviation Regulations (the "FAR") permit air carriers to limit their liability for lost, delayed, or damaged baggage during domestic carriage. *See* 14 C.F.R. § 254.4 ("[A]n air carrier shall not limit its liability for provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery of a passenger's … baggage … to an amount less than $3,500 for each passenger"). The 2011 regulations include a section entitled, "Enhanced Protections for Airline Passengers," which requires carriers to adopt a Customer Service Plan. *See* 14 C.F.R. § 259.5. A carrier's Customer Service Plan must address an enumerated list of subjects and comply with the following "minimum standard[]":

> Delivering baggage on time, including making every reasonable effort to return mishandled baggage within twenty-four hours, compensating passengers for reasonable expenses that result due to delay in delivery, as required by 14 CFR part 254 for domestic

---

[2] JetBlue requests judicial notice of the federal regulations and other materials issued by the Government. Mot. to Dismiss at 3 n.3. Because these are matters of public record not subject to dispute, JetBlue's request is GRANTED. *See* Fed. R. Evid. 201.

3

flights … and reimbursing passengers for any fee charged to transport a bag if that bag is lost[.]

14 C.F.R. § 259.5.

In 2016, Congress directed the DOT to adopt additional consumer protection regulations that would require carriers to refund baggage fees if a bag is delayed for a set amount of time (as determined by DOT). *See* Pub. L. No. 114-190 (July 15, 2016). The comment period was due to end on January 17, 2017. *See* Advanced Notice of Public Rulemaking (Mot. to Dismiss, Ex. D; Dkt. No. 18-4). To date, no further action has been taken. *See* DOT Docket No. DOT–OST-2016-0208.

### C. Alatortev's Allegations[3]

On or about May 12, 2017, Alatortev and his wife were charged a fee of $25 for JetBlue to deliver his wife's bag from Boston, Massachusetts, to Sacramento, California. Compl. ¶ 30. According to Alatortev, he and his wife were "advised that their flight would be diverted to San Francisco, California." *Id*. Once they arrived in San Francisco, "they discovered, and it was confirmed, that their bag had been lost." *Id*. ¶ 31.

Alatortev alleges that "JetBlue did not ultimately deliver the bag until May 15, 2017, when [he] had to return to the airport and pick it up." Compl. ¶ 32. JetBlue did not refund the baggage fee, but instead offered them a credit that would require them to do business with JetBlue in the future. *Id*. ¶ 33.

## II. PROCEDURAL HISTORY

On August 21, 2017, Alatortev filed this complaint purporting to represent a nationwide class of other similarly situated domestic travelers "who were charged a baggage fee, and who had their bag lost, delayed, damaged, and/or destroyed while it was in the custody and control of [JetBlue]." Compl. ¶¶ 34, 36. He seeks a refund of the baggage fees charged. *Id*. ¶ 34.

Alatortev asserts causes of action for (1) breach of contract, *see* Compl. ¶¶ 47–57; (2)

---

[3] JetBlue defers to Alatortev's factual allegations, but "note[s] that the actual facts are hardly as the Complaint present them." Mot. to Dismiss at 2 n.1.

4

1 unjust enrichment/quasi contract, *see* Compl. ¶¶ 58–63; and (3) breach of the covenant of good faith and fair dealing, *see* Compl. ¶¶ 64–68. He seeks an order that JetBlue "immediately refund[] all baggage fees charged for a bag that was lost, damaged, or delayed[,]" and other restitutionary relief. *See* Compl., Prayer for Relief at 8–9.

## LEGAL STANDARD

## FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*

*Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

JetBlue argues that Alatortev's complaint must be dismissed on several grounds: (1) his state-law claims are expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1), because they relate to JetBlue's "prices" and "services"; (2) his state-law claims are impliedly preempted by principles of field and conflict preemption because they relate to an area pervasively regulated by the federal government under the Federal Aviation Act, 49 U.S.C. §§ 40101 et seq.; (3) his complaint fails to state a claim for relief; (4) the Complaint fails to state a basis for personal jurisdiction over JetBlue in California; and (5) he does not have standing to assert claims based on the delayed delivery of his wife's bag. Mot. to Dismiss at 1 ("MTD")(Dkt. No. 18).

### I. EXPRESS PREEMPTION AND ALATORTEV'S ABILITY TO STATE A CLAIM

Alatortev alleges three contract-based claims against JetBlue—breach of contract, unjust enrichment/quasi contract, and breach of the covenant of good faith and fair dealing, *see* Compl. ¶¶ 47–68. As discussed below, his ability to state each of these claims is indivisible from the issue of preemption. JetBlue argues that Alatortev's state-law claims are barred by the express preemption clause of the Airline Deregulation Act of 1978 (the "ADA") because they relate to JetBlue's "prices" and "services."[4] MTD at 5. The preemption provision was included "[t]o ensure that the States would not undo federal deregulation with regulation of their own" and

---

[4] At this time, I do not address Alatortev's arguments that baggage fees do not "relate" to JetBlue's "prices" and "services" because the issue is ancillary to the ultimate question of preemption. *See Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017)("The States may not impose their own rules regarding fares, routes, or services, but may afford relief for breaches of obligations the airlines voluntarily undertook themselves, even when the obligations directly relate to fares, routes, and services."); *Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2010)("As in *Wolens,* we see no need to dwell on whether Sanchez's claims relate to the air carrier's 'price.'"); *Hekmat v. U.S. Transportation Sec. Admin.*, 247 F. Supp. 3d 427, 432 (S.D.N.Y. 2017)(finding that "the Second Circuit tacitly endorsed an interpretation of 'service' that includes baggage handling.")(citing *Air Transport Association of America, Inc. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008)); *Implementation of Preemption Provisions of the Airline Deregulation Act of 1978*, 44 Fed. Reg. 9948, 9951 (1979)("[A] state may not interfere with the services that carriers offer in exchange for their rates and fares [including] …minimum liability for loss, damages and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage")(MTD, Ex. E; Dkt. No. 18-5).

"prohibit[ed] the States from enforcing any law 'relating to rates, routes, or services' of any air carrier." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–79 (1992)(citing 49 U.S.C. App. § 1305(a)(1)).

In *American Airlines, Inc. v. Wolens*, the Supreme Court held that "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." 513 U.S. 219, 222 (1995). Specifically, the court "d[id] not read the ADA's preemption clause … to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id*. at 228; *see also id.* at 232–33 ("The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated."). In analyzing breach of contract claims under the so-called "*Wolens* exception," courts are confined "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233. Justice Ginsburg described this as a "middle course" in between "minimal preemption" and "total preemption." *Id*. at 234. To summarize, "an otherwise preempted claim may remain viable under the ADA if it falls within the two-prongs of the *Wolens* exception: 1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010).

Alatortev argues that his claims fall within the *Wolens* exception to preemption because "they challenge JetBlue's self-imposed undertaking to check a bag for the passenger's respective flight and to timely deliver the bag, or otherwise reimburse the passenger." Opp'n at 1, 5 (Dkt. No. 25). So long as Alatortev's claims seek to only enforce the terms of the COC, they do not constitute "a State's enactment or enforcement of any law[,]" and are therefore, not preempted. *Wolens*, 513 U.S. at 228–29; *see also Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017)("*Wolens* controls as to Hickcox-Huffman's breach of contract claim. If she adequately pleaded breach of contract, then her claim is not preempted."); *All World Prof'l Travel*

7

*Servs., Inc. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1168 (C.D. Cal. 2003)(finding "part" of plaintiff's contract claim that airline "acted extra-contractually does not allege 'a violation of state-imposed obligations, but rather … that the airline breached a self-imposed undertaking.'"). But JetBlue contends that Alatortev's claims actually seek to "enlarge[] or enhance[]" the scope of the agreement because the relief he seeks is not promised in the terms of the agreement. MTD at 11.

To support its position, JetBlue highlights *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103 (W.D. Wash. 2011). Schultz brought a purported class action for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment "as a result of [defendant's] failure to deliver his baggage in a timely manner after [he] paid the checked baggage fee." *Id*. at 1104. He alleged that the failure amounted to a breach of contract, and he sought a refund of his baggage fee. *Id*. at 1106. Because "[a]ny liability resulting from damage or delay to baggage [wa]s expressly governed by the airline's Conditions of Carriage[,]" the court rejected plaintiff's contention. *Id*. It concluded that "[p]laintiff ha[d] not sued to enforce the terms of a contract, but [] sought to enhance his agreement by seeking a refund of the baggage fee based on the external laws of the state." *Id*.

JetBlue contends that the same reasoning applies here, because its terms do not guarantee on time delivery of a passenger's bags. MTD at 11. The COC expressly states that JetBlue "will endeavor to deliver bags on time, including making every reasonable effort to return mishandled bags within twenty-four (24) hours, reimbursing Passengers for reasonable expenses that occur because of any delay on domestic flights … and reimbursing Passengers for any fees associated with transportation of a lost bag." COC ¶ 38(A)(3). JetBlue distinguishes the "endeavor" language with the language of commitment recently analyzed by the Ninth Circuit in *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1060 (9th Cir. 2017). MTD at 12.

The *Hickcox-Huffman* court reversed a district court order dismissing a plaintiff's class action complaint alleging breach of contract and related state law claims against US Airways on the grounds that they were preempted by the Airline Deregulation Act. 855 F.3d at 1060. The Ninth Circuit held that plaintiff's claims were not preempted because "[n]o state law made US

Airways promise timely delivery of the first bag for $15." *Id*. at 1066. Rather, plaintiff sought only to hold US Airways to its express "commit[ment] to ... [p]rovide on-time baggage delivery." *Id*. at 1063–64. Especially relevant here, the court noted that

> Unlike the "best efforts" language for finding and delivering delayed baggage, the commitment has no "every effort" or other language limiting the commitment in some way that might arguably make it a mere promise of best efforts or mere aspirations. US Airways assented to be bound to deliver checked baggage on a passenger's arrival. It is hard to see what "committed" might mean other than a promise, a contractual obligation.

*Id*.; *see also Schultz*, 797 F. Supp. 2d at 1107 (finding the payment of a baggage fee "along with language on Defendant's website expressing its aspirational intention to deliver baggage in a timely manner [] insufficient to create an implied contract."). JetBlue urges that its "COC is demonstrably different and, in fact, is in line with the Ninth Circuit's comment that a 'mere promise of best efforts' or 'mere aspirations' is not the same as a voluntary, self-imposed obligation." MTD at 12.

Alatortev insists that his claims are based on specific provisions of the COC "which requires it to place the bag on the same flight as the passenger, deliver the bag on time with the passenger, and reimburse the passenger for any fees associated with the transportation of a lost bag." Opp'n at 7 (citing COC ¶¶ 11, 38(a)(3)). But there are several issues with Alatortev's allegations.

First, he acknowledges that the bag was delivered on May 15, which conflicts with his prior statement that the "bag had been lost." Compl. ¶¶ 31, 32. JetBlue emphasizes that a "lost bag" and a "delayed bag" are two separate concepts under both the DOT regulations and the COC, and JetBlue only promises reimbursement of baggage fees for *lost* bags, not "delayed" or "mishandled" bags. COC ¶ 38(A)(3); 14 C.F.R. § 259.5(b)(3); *see also* COC ¶ 18(B) (distinguishing between lost, damaged, and delayed bags). And it specifically limits remedies to passengers whose bags are delayed to reimbursement of "reasonable expenses." COC ¶ 38(A)(3). Since his bag was not "lost" as the COC uses that term, I do not see how he is entitled to reimbursement of his baggage fee under the unambiguous terms of the contract.

9

Next, JetBlue never commits to "on time" delivery, rather it "endeavor[s]" to deliver baggage on time. COC ¶ 38(A)(3). As discussed in *Hickcox-Huffman*, this language does not provide an express commitment to deliver baggage on-time. 855 F.3d at 1064.

Finally, JetBlue insists that the COC does not promise to place the bag on the same flight as the passenger. Alatortev points to the COC's promise that JetBlue "*will* check the baggage of a fare-paying Passenger for the flight on which the Passenger is traveling." COC ¶ 11 (emphasis added). His argument that his claim is based on this paragraph carries no weight because the complaint does not reference this provision at all. *See* Compl.; Reply at 8 (pointing out that the complaint does not reference the language in paragraph 11). Even if I ignore that omission, I am inclined to agree with JetBlue that this sentence should be read in the context of the following two sentences suggesting that this provision limits a passenger's attempt to check bags to destinations other than the passenger's destination. Reply at 8; *see* COC ¶ 11 ("Passenger may not check baggage for transportation on any flight other than the flight on which the Passenger is traveling. Carrier will not check baggage to a destination other than the final destination on the Passengers reservation."). JetBlue also highlights other portions of the COC that seem to undercut Alatortev's position, specifically paragraph 18, where it "expressly contemplates the possibility that checked bags may be delayed in delivery." MTD at 17 (citing COC ¶18). But I see no need to fully flesh out these issues until the allegations are made part of Alatortev's complaint.

In its current state, Alatortev's breach of contract claim depends on an "enlargement or enhancement" of the parties' agreement, and is therefore preempted by the ADA. *Cf. Hickcox-Huffman*, 855 F.3d at 1062 ("*Wolens* controls as to Hickcox-Huffman's breach of contract claim. If she adequately pleaded breach of contract, then her claim is not preempted."). In other words, he has not "adequately pleaded" a breach of contract claim.[5] *Id.* The same holds true for his claims

---

[5] JetBlue offers additional reasons why Alatortev fails to state a claim, including his failure to comply with the Notice of Claims provision of the COC. MTD at 20. In response, Alatortev mischaracterizes JetBlue's arguments to insist that JetBlue "attempts to slice and dice the Contract of Carriage—throwing away provisions that are not favorable to it (paragraphs 11 and 38(A)(3)) and retaining provisions that benefit it (the notice provision). Opp'n at 14. But this is not at all what JetBlue argues. Rather, it seeks to enforce the clear and unambiguous terms of the written contract. I will reserve ruling on this independent basis for dismissing the complaint.

for unjust enrichment/quasi contract and breach of the covenant of good faith and fair dealing because they are essentially alternative theories to the breach of contract claim. *See id.* at 1066 (holding that the breach of implied covenant of good faith and fair dealing claim is "merely an aid to interpreting the terms of a contract."); *All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1169 (C.D. Cal. 2003)("Courts have held that unlike contractual duties which are self-imposed, the elements for unjust enrichment and injunctive relief are defined by state law."). Because he may be able to amend his complaint to state a claim based on JetBlue's "self-imposed undertaking," his complaint is DISMISSED WITH LEAVE TO AMEND.

For the benefit of Alatortev's amended pleading and any subsequent briefing, I will quickly address the remaining issues.

## II. IMPLIED PREEMPTION

JetBlue argues that even if Alatortev's claims are not expressly preempted by the ADA, they are impliedly preempted by the Federal Aviation Act (the "FAA") and related regulations. MTD at 13; Reply at 7 (Dkt. No. 26). To bolster its position, it highlights a footnote from *Hickcox-Huffman*, in which the Ninth Circuit noted that DOT regulations governing domestic baggage liability issued after Hickcox-Huffman filed her complaint might "result in a different preemption conclusion regarding contract claims arising out of baggage lost after their issuance." 855 F.3d at 1066 n.45. Congress has expressly delegated to DOT the responsibility to oversee airline compliance with passenger protection rules and issue remedial orders against carriers. *See* S. Rep. No. 114–428, at 8 (2016) ("[T]he Federal Government continues to legislate and enforce certain consumer protections for airline passengers"); *id.* at 9 ("Requires airlines, after appropriate rulemaking by the DOT, to provide refunds for delayed baggage")(MTD; Ex. B; Dkt. No. 18-2).

Just as with JetBlue's express preemption argument, its implied preemption argument only works to the extent that Alatortev seeks to enlarge the scope of the parties' agreement. Otherwise, there is no state-imposed obligation to find impliedly preempted. *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998)("As *Wolens* pointed out, the Department of Transportation has neither the authority nor the apparatus required to superintend contract disputes.", citing *Wolens,* 513 U.S. at 232).

11

### III. PERSONAL JURISDICTION[6]

Because Alatortev's complaint fails for other reasons, I need not address JetBlue's arguments against exercising personal jurisdiction over it in California for a nationwide class. But I note that he conceded that no general jurisdiction exists, and he failed to plead a basis for specific jurisdiction. He should include these allegations in his amended complaint.

### IV. STANDING

JetBlue also argues that Alatortev lacks standing to bring these claims because the checked bag belongs to his wife, and he does not allege that he purchased the airline ticket, which forms the basis of the COC. In Opposition, Alatortev aims to supplement his complaint by alleging that he "purchased the airline ticket and paid the baggage fee." Opp'n at 23. He must include these allegations in an amended complaint to establish a basis for him to assert any rights under the COC.

### CONCLUSION

In accordance with the forgoing, JetBlue's motion is GRANTED. Alatortev should file an amended complaint, if any, within 30 days.

**IT IS SO ORDERED.**

Dated: February 7, 2018

William H. Orrick
United States District Judge

---

[6] JetBlue did not "waive" this argument by filing a notice of appearance, as Alatortev contends. In accordance with Rule 12(h), JetBlue raised its jurisdictional argument in its first responsive pleading. Fed. R. Civ. P. 12(h).

12